Good morning. If it pleases the Court, my name is Michael Bigelow. I represent Petitioner Appellant in this matter. Welcome back. Thank you, Your Honor. I brought the same binder, same arguments I was sort of hoping to pick up where I left off yesterday, but I don't think that would work. I don't know that we even need to get to Bennett, to be honest with you. In re Clark is well-established state ground, but lack of consistent application is evident and confirmed, arguably, by the Supreme Court's decision in Chavez. Here's my reasoning. Chavez says that what we look at, what this Court looks at, is reasonableness. In re Clark is predicated on timeliness being reasonable. U.S. Supreme Court says, well, reasonable is a moving, floating standard. I'll be honest with you. I don't know what's reasonable. California Supreme Court is inconsistent about what is and is not reasonableness. Respondent says it's reasonable, according to in re Clark, according to footnote 5, that a writ of habeas corpus be filed concurrently or almost concurrently or somewhere along that line with the filing of the opening brief in State cases. Well, okay. That's reasonable under those circumstances. But is reasonable fact-driven? Is the fact that the or is it a priori? Is it driven by a set sound being heard in the forest, whether or not someone is there to hear it? Is it driven by equitable tolling? My clients have too many of them, less than eighth grade education. They're incarcerated. They're schizophrenic. They're psychotic in other ways. What is reasonable? You know, what is reasonable? Who determines what is reasonable? The Supreme Court has said this Court determines what is reasonable, almost on a case-by-case basis. At least that's the way I read Chavez. Now, the California Supreme Court has established some standards for the without substantial delay in capital cases, right, whether that's appropriate or not. I mean, they have said 90 days unless some exceptions apply. I'm not certain, Your Honor, but there are standards, yes. I'm not a — But nothing has happened in that regard with respect to non-capital cases. I believe that to be the case, that nothing has happened in that regard with respect to non-capital cases. And in this case, do I understand correctly that you or whoever had the case below stated squarely to the district court in non-capital cases like this one, that rule is not being consistently applied? That's — I am saying that that rule is — That's why you're saying you don't know if we need to get to Ortiz or Bennett, that it was laid out for the district court. Well, it was laid out for the district court, but, yes, and I was — well, I was actually a third lawyer, but I was the one who argued to the district court. And I did argue — I believe I argued that to the district court. But I don't think that we need to get to Bennett because the Supreme Court has, it is not reasonable and what — or who makes that determination. Now — and whether it's consistently applied or not. Now, I've argued until I'm blue in the face that it is not consistently applied, and I tried to show that by my survey of cases from a finite period of time in January, I think, 19 — or 2003 to July of 2003, something to that effect. I would have gone further, except Lexis won't permit it. They won't bring up any more than 3,000 cases. And given what we all know to be true or should all know to be true about California's scheme of handling direct appeals and habeas, we all know that they are paneled out through various programs, projects — in my district, it's the Central California Appellate Project — to panel lawyers. Panel lawyers, if they see an appellate issue or a habeas issue, potential habeas issue, they may go back to the project and say, I want additional funding. And the project says, no, we're not authorized to give you additional funding except in certain kinds of cases. Now, that's not true in capital cases. In capital cases, now, concurrently, habeas counsel is appointed, as I understand it, in capital cases. But in non-capital cases, the AOB gets filed. It works its way through the court system to the petition for review. That may take three months, six months, nine months, whatever. It comes back. A letter goes to the client, and he says, I'm really sorry, but your direct appeal has been denied. So where's the — you know, where's the consistency if we go back and say, well, that's unreasonable, or we go and we say that's reasonable? We look at something like 300 cases in a six-month period of time that cited In re Clark or In re Robbins out of almost 3,000 cases. We know that those 3,000 cases, we know that those 3,000 cases, habeas was not filed commensurate with the filing of the AOB, which is what counsel would suggest is reasonable following footnote five in In re Clark. So it — if I don't know what's reasonable, reasonably timely, and this Court doesn't know what's reasonably timely, and the Supreme Court defers reasonable timeliness back to this Court, then it seems to me that as a matter of course, it is inconsistently — the procedural bar is inconsistently applied. And if it's not, then, following the tenet of Bennett, it seems that it should be Respondent's obligation to prove that it's not. Commissioner Shaw — To prove that it is. Thank you. Yes, prove that it is. Commissioner Shaw would go absolutely nuts as a CJA-appointed counsel if I submitted my voucher to him reflecting that I had reviewed 3,000 habeas cases out of the State court to determine which were and which were not similar in fact to mine. I don't have that kind of database. I don't have that. But counsel does. The Attorney General's office does. Back to the matter is they can't. I mean, common sense tells us they can't. So, I guess where I'm hamstrung as Petitioner's counsel is that I simply do not know what the triggering point is, and I simply do not know what is reasonable. And if I don't know what's reasonable, then I don't think anybody else does either. Maybe we'll find out when we hear your opponent's argument now. Yeah. I know. I've got ten minutes left. You're sure I can't retroactively go back to yesterday? Thank you very much. Thank you. Good morning, Your Honors. Good morning, counsel. I'm Todd Marshall for Respondent Hubbard. I disagree with my opposing counsel. I believe that Bennett is the rule, and I think Bennett tells us clearly what to do. And if you take Bennett in conjunction with Woods and Powell and Fields, I think what we need to do in cases like this, what the Court needs to do in cases like this is fairly clear. Bennett tells us first that we need to look at the difference between a capital and a and not two non-capital cases. And moreover, there is a subtle timeliness difference where there's a presumption of timeliness in a capital case that does not apply in a non-capital case. However, one thing where capital cases and non-capital cases are the same is after the presumption of timeliness is passed, then both are treated the same in terms of should you have known or did you know about your claim, and then how long after that time did you wait before you filed. This Court said in Bennett that it hasn't decided exactly how long, but certainly six years is. And in this case, we are on the order of five years past the denial of the direct appeal and almost four years past the first habeas. And that's another important point, the fact that we're dealing with a second habeas petition. Can the Supreme Court get to the issue that you're talking about right now? In terms of the, you know, deciding on the merits of the petition that the delay in this case was inappropriate? I don't believe it did. In this case, we stopped at the point in Bennett where the burden was to be shifted by citations to authority from Petitioner. And that leads me to the case law says what Petitioner needs to provide is a reasoned decision, either published or unpublished under Powell, that tells us that the bar is inconsistently applied. And until he does that, my burden doesn't trigger under Bennett. The reason that postcard denials don't work was pointed out by the magistrate, because they require a series of guesswork or, what this Court has precluded, looking behind post-talk to the pleadings. If we look purely at the language of the California Supreme Court opinions, a postcard denial tells you nothing. It doesn't tell you whether they offered any justifications. It doesn't tell you whether they applied for any miscarriage of justice exceptions. It doesn't tell you anything about the circumstances of the case. But rather, a reasoned published or unpublished decision would tell you what has happened when the default occurred. And so as a result, I would posit that the survey was faulty because it didn't provide us with the details necessary to find any number of cases that were inconsistent. Powell suggests that several cases would be enough to shift the burden to me. Other case law says that a lone aberration of inconsistency is probably not enough. My responsive burden under Bennett and the other cases is going to be measured by the kind of inadequacy or inconsistency proffered by the Petitioner. If Petitioner doesn't provide anything showing inconsistency, I have no place to begin. I have nowhere to know where to start. I can't look at the postcard denials and tell the Court anything about them unless I violate the don't go behind and look at the pleadings rule. And so the postcard denials don't help us any in that circumstance. The Supreme Court of California has said in capital cases without substantial delay means 90 days unless a certain class of exceptions apply, right? Well, I disagree with that. It says that you have to explain any substantial delay that occurs beyond the 90 days. The rule says that the filing, to be timely, has to be filed, quote, without substantial delay. That is the phrase revealing the rule. Okay. I think the mind's reputation of the rule in California is that if you file it within 90 days, you're presumed timely. No question. If you file after that time, then we need to look at why did you file after that time. And you need to tell us why. Like, when did you learn of the claim? If you learned of the claim the day before you filed, then you're going to be timely under that analysis. Has the California Supreme Court said in writing that in non-capital cases the 90-day rule applies? No, I don't believe the 90-day rule applies to non-capital cases. It's a capital case. Like this one. Correct. The 90-day rule does not apply. So we go straight to the analysis of when did you learn. The second part of my question is the California Supreme Court has said the 90-day rule applies over here in capital cases unless you can fall into one of these exceptions or one of these exceptional circumstances apply, correct? Miscarriage of justice exceptions. Okay. Have they said that on the other side of the equation? Yes. I believe that they have, that the miscarriage of justice exceptions do extend to non-capital cases. And I had a note on a non-capital case. But have they consistently told non-capital State habeas Petitioners that if you're over 90 days, you have to fall in these exceptions? I believe that the rule — It's a little different than recognizing that a fundamental miscarriage of justice exception applies, right? Well, I'm not sure I understand the question. Are we talking — Exception to what? In one case, it's an exception to 90 days. If you're not filing within that 90 days, then you have an exception. In the other case, you have the exception, but there's got to be an exception to what? To not doing — filing within what? Reasonable time after you knew or should have known of the claim. And a reasonable time is always applied the same way? I believe that's correct. How do we know? Well, the cases have talked about three and four years being too long. I haven't found any cases in which there was an unreasonable delay, you know, in time frames, you know, as short as 90 or 120 days. In this case, we're talking about a very long delay. Between the time of the direct appeal and the time of the second habeas petition, we're talking about a five-year, nearly five-year delay in this case. I think this Court said that substantial delay of six years in Bennett was clearly too long. The next thing wrong with this survey is that it deals with a time frame after the decisions in the Court, and therefore, it doesn't really apply at all to the time frame of default, which we know necessarily occurred prior to the Court's decision, and closer in time to the time when Petitioner knew or should have known of his claims. And since all of his claims stem from the trial, he should have known or knew about his claims then. If we were to send this back to district court, is the State capable, as your opponent suggests, of quantifying the post-Clark cases and the post-Clark noncapital cases? The reasoned and explicated cases, I believe the answer is yes. As to postcard denials, I think the answer would be no. You'd have to go back to each individual case where there was a postcard denial and look at how much delay was involved. And the pleadings to determine whether justification was proffered or whether an exception was applied for or discussed, yes, I think that would be an impossible burden. And that's why I think the case law directs us to look at reasoned decisions, published or unpublished, and not look at postcard denials, because I don't think you can get anywhere with the postcard denials. But if among those postcard denials there were cases allowing someone to file that had waited as long as six years? Again, you what you don't know from the postcard denial is whether or not the postcard denial is one or more cases that have the length of time involved in this case. Again, what you don't know, though, is whether the Petitioner said, I learned of this claim yesterday, and was unaware of this witness who has now come forward until just the day before, which would be a justification of the delay. And that's what the postcard denial doesn't tell you. All it tells you is simply the postcard denial, sir. That's correct. Unfortunately, with the vault You're saying we have no idea of whether it's being consistently applied or not. I would say as long as the rule that you're not looking at the pleadings is in place, then you can't get there. You either have to accept that you're going to go with reasoned decisions only, or I think the rule would have to be changed if you're going to talk about postcard denials, so that you would then look at the pleadings and the actual interaction of the parties and what they were arguing below. What's the case that tells us that we should look only to reasoned decisions? I believe Powell supports that decision, and I believe it describes talking and looking at language of the decision, and I think postcard denial doesn't have a language of decision. Also, we know from Wood, which this Court cited, that merely saying it's inadequate is not enough. I'll acknowledge that that was a case in which the Petitioner did not discuss the inadequacy  of the decision, and the Petitioner's court did find a waiver, however, the court went on to say, even if we were to consider his saying it's not enough, that would be an inadequate showing to shift the burden. Powell also directs us to look at that the Petitioner needs to cite several cases in order to shift the burden back to the State. Petitioner cited Morales in his briefs, and I think that's not helpful to the discussion as I think the defaults in that case occurred pre-Clark. Important thing, I think, to note about California's timeliness standards is that it's much like the AEDPA standards in terms of it talks about having a line that moves  I think that's much more fair than drawing a line in the sand and saying if you're after 120 days, no matter what, you're out. Do you think the AEDPA standards are flexible? They depend on what's reasonable? I think they depend on when you learned or should have learned of your claim. And I think that's the triggering point for, I think, for both of those standards. And I think that is a reasonable way to do things. I think it's reasonable to say, if you knew of this claim six years ago, that's not reasonable to wait. If you learned of the claim last month, then it's not reasonable for us to bar you from coming and discussing that claim. That would be so – I would posit that that would be unfair. And so I would posit that a moving time frame is a more fair way. You don't think you have to file after a year, after it becomes final in State court under an AEDPA, a habeas case? I'm sorry? I said you don't think you have to file? No, that's not what I was referring to. I'm sorry. I think it – I think the AEDPA begins to run when the claims could have been discovered through due diligence under 244-4D1D is what I'm referring to. Also, the Wood case tells us that the discretionary aspect of the time bar is not does not invalidate the time bar. I'd like to discuss for a moment that on remand in Bennett, the Petitioner proffered letters from the clerk, and I'd like to point out that on remand, the Petitioner I think that was an inadequate showing. First of all, it was not a legitimate source of legal authority, and moreover, a clerk's letter is not – particularly a clerk's letter that's potentially unconsulted by the court is not evidence of the court's actions, and therefore, I think those would be inadequate to shift the burden back. I agree with the Court that Deere v. Calderon is not an appropriate way to look at this. I don't think looking at the pleadings underneath is the appropriate way. I think looking at recent decisions, either published or unpublished, is the appropriate methodology. Well, if you're really trying to find out whether a rule is being consistently applied, how do you find that out by looking only at a small part of the applications of it? I think that if the published decisions and unpublished recent decisions by the Court are consistent, and the Court has told us in Clark that it's being consistent, that you can have faith in the Court that it's doing what it says it's doing. Well, so the way you find out whether it's being consistently applied is you ask the Court, are you applying it consistently, and if they say yes, that's it. Well, that's what the current, I think, state of the rules in the circuit suggests that we do. Alternatively, you'd have to change the rules to then look at – to look post hoc at the pleadings, because there's no other way to explain what has happened in a postcard denial scenario. Well, if you're right, which you may be, it sounds like something ought to be changed. That would be up to the courts. If we're serious about saying that the rule has to be applied consistently and you're saying we can't really look at 90 percent of the cases to determine that, we can only see if they're being applied consistently in 5 or 10 percent of the cases, there's something wrong with our process. I have faith in the California Supreme Court that if they – Oh, in that case. If they say they're doing something – All of these cases come from the California Supreme Court, and if we have faith in them, why bother with habeas? Well, I believe they should be deferred to under the ADPA. They should do. Right. I'd like to turn my attentions briefly now, if I might, to Mayo v. Felix and the issue of the relation back. In this case, we had kind of an unusual procedural history. We – the State was victorious on an argument as to claims 5 and 6, sub part 1, which would be the personal presence claim, and the appellate counsel ineffectiveness claim for failure to raise district attorney inconsistent arguments in the trial court. We were able to successfully convince the – Just to interrupt you one second, let me say – make one observation about the California Supreme Court. It's not only we that think habeas is important. It's also the California Supreme Court. As the Chief Justice made clear in his opposition to the changes to the Habeas Bill in the Patriot Act, he made clear that the – it's the State courts that believe it's a good idea to have Federal courts reviewing their decisions in habeas, because they're not always right as they recognize, and they're as overwhelmed by cases as, you know, we sometimes think we are. And it's not that we don't have confidence in them. The California Supreme Court is a very fine court, but they, like we, can make mistakes. And when the Constitution is violated, it's good to have a Federal court to take a look at those questions. I would agree wholeheartedly that the more screens you apply to a scenario, the more an error or a mistake. And I think that we all want there to be as few or no mistakes as possible. And so that kind of scrutiny, I think, is important. Turning back to the Maile v. Felix question, in the district court, the court did rule that the claims, as I articulated a moment ago, 5 and 6 sub 1, did not relate back. And then this Court's decision in Maile v. Felix came down and, I think, took a minority view, which broadened the relation back question to being the whole trial. We then were asked to brief below what impact on the district court. I had to acknowledge that the district court was bound by this Court's decision, even though I argued that I thought this Court's decision was wrong in that instance. Moreover, at the oral argument, I posited that it might be prudent for the district court judge to delay decisions since the matter was before the United States Supreme Court. He did not want to take advantage of that suggestion. And so, ultimately, there was a ruling against us based upon a now overturned case. I believe the current law on Felix v. Maile makes it clear that the two claims discussed do not relate back because they did not come from the same set of core facts and that they were different in time and in type. Mr. Martin didn't mention anything in his original timely filed pleading about his personal presence at the playback of the jury tape. There was no reference either as a direct claim or as an ineffectiveness claim at all. And moreover, the original timely petition only described a very few limited numbers of types of ineffectiveness of appellate counsel. He spoke generally about appellate counsel's ineffectiveness and then made one claim that I'll quote, no other grounds, specifically the denial of directed verdict on the robbery allegation and gross ineffective assistance of counsel was brought forward. Beyond that, there was no other mention of appellate counsel in the original petition. And so I would posit that an argument as specific as the DA raised inconsistent theories in the trial court was not raised and therefore does not relate back and should  not be brought forward. Thank you, counsel. Thank you, counsel. And I don't have it right here. I mean, easily. But I believe that if you do go through and I lay it out in in my brief, I believe that if you go through the various filings, the original filings, you will see that in his original pleadings, his pro se pleadings, Mr. Martin did in fact raise the issue of ineffective assistance of counsel related to the parameter tapes, the tapes that were played and the 402 hearing. It's convoluted, but I submit to the Court that it's there. I might be wrong, but I don't think I am. And maybe the Court made reference to this, and I just simply didn't hear it, and I apologize, but in the dialogue that it, the discussion that it had with counsel on the Supreme Court and its decision and who decides what's reasonable, I read Chavez almost as a mandate to this Court to review, I don't know, I read Chavez almost as a mandate to review state proceedings, state habeas, cases to determine whether the timeliness bar is reasonable or not, or the failure to file in a timely manner is reasonable, which imposes, I would suspect, a tremendous burden on this Court, but I think that's almost the way I read the case. And it wasn't really, just so that we don't get bogged down too much, the original petition was filed, and the chronology is in the reason, I don't need to reiterate it, but there was an awful lot of litigation going on with respect to what had been exhausted, what hadn't been exhausted. Felix came into play, and then the final petition was filed. So, which I submit was a reiteration, a cleaned-up version of what had been previously submitted. Counsel says that it hadn't been previously raised, and we disagree on that. But even so, given all that preceded and the litigation that had preceded, it is reasonable under the circumstances and the burden shifts, and I've made all of the arguments I'm going to sit down, and I'd like to thank you all for your attention. Thank you, counsel. Thank you both. The case just argued will be submitted.
judges: Reinhardt, Noonan, Hawkins